UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENITA L. YOUNG,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 17-10268
HON. DENISE PAGE HOOD
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Venita L. Young ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #14] be DENIED and that Plaintiff's motion for summary judgment [Docket #10] be GRANTED to the extent that the case be remanded for further administrative proceedings.

## I. PROCEDURAL HISTORY

On July 7, 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of June 13, 2013 (Tr. 120-123). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on February 8, 2016 before

Administrative Law Judge ("ALJ") Ronald Herman (Tr. 18-20). Plaintiff, represented by attorney Carl Anderson, testified[1] (Tr. 1-21, 36). After a few minutes into the hearing, ALJ Herman advised Plaintiff that he was prepared to make a disability finding provided that she amend her alleged onset of disability date to December 31, 2014, which he erroneously informed Plaintiff was her date last insured ("DLI") for DIB[2] (Tr. 18-20, 36). At the advice of her attorney, Plaintiff amended her onset date. Consistent with this agreement, on March 25, 2016 ALJ Herman found that Plaintiff was disabled as of her DLI of December 31, 2014 and was entitled to DIB benefits from that date forward (Tr. 36-45).

However, on April 28, 2016, the Office of Central Operations discovered that Plaintiff's last date of eligibility for DIB was December 31, *2013* and consequently, ALJ Herman's finding that Plaintiff was not disabled until December 31, 2014 would not result in an award of DIB (Tr. 112-113). In a notice dated May 23, 2016, the Appeals Council informed Plaintiff that it had reviewed the March 25, 2016 decision and that due to the ALJ's "error of law," Plaintiff was not entitled to DIB (Tr. 115-116). Plaintiff was informed that the Appeals Council would not act on its determination for 30 days and that within that time frame she could provide new and material information or request an appearance before the

---

[1] The February 8, 2016 hearing transcript found in the administrative transcript is erroneously dated *October* 8, 2016 (Tr. 1).

[2] To be eligible for DIB, a Claimant is required to show that on or before the DLI she experienced "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

Appeals Council (Tr. 117-118). The letter states that if Plaintiff did not respond within 30 days, the Council would "assume" that she did not want to send additional information or appear before the Appeals Council (Tr. 117-118). Plaintiff did not request an appearance but submitted a Michigan Department of Human Services ("DHS") payment history showing that she began receiving payments in December, 2014 (Tr. 142). On November 27, 2016, the Appeals Council found that because Plaintiff's entitlement to DIB ended on December 31, 2013, the ALJ's finding that Plaintiff was disabled as of December 31, 2014 precluded an award of benefits (Tr. 26-27).

Plaintiff filed for judicial review of the final decision in this Court on January 27, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born December 6, 1970, was 45 when the ALJ issued his decision (Tr. 45, 120). She completed four years of college and worked in human resources (Tr. 147-148). She stopped working in June, 2008 when her employer eliminated her position (Tr. 147). She alleges disability as a result of peripheral neuropathy; depression; "delirium with [tremors];" alcohol and tobacco abuse; gait disturbance; numbness of the hands, legs, and feet; and equilibrium imbalance (Tr. 146).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She had not worked since the alleged onset of disability date of June 13, 2013 (Tr. 4). Her last job, involving "employee orientation, training, and traveling" for the Red Cross,

ended in 2008 (Tr. 5). A "house chore" provider obtained through the State of Michigan brought her to the hearing (Tr. 6). Plaintiff lived by herself and due to back pain, spent most of the day reading and watching television (Tr. 7). The state aide began working for her in September, 2014 and performed most of her household and shopping chores (Tr. 7). She was also currently receiving state disability benefits (Tr. 8).

     Plaintiff was unable to sit for more than 15 minutes or lift more than three pounds (Tr. 8). She was unable to carry even small items due to gait disturbances (Tr. 8). She required the use of a cane and was unable to walk even one block (Tr. 9). She would be unable to perform even work allowing a sit/stand option due to varying degrees of body pain and the medication side effect of sleepiness (Tr. 11-14). If her medication were regulated to control pain without sleepiness, she would nonetheless be unable to work due to the need to recline for most of the day (Tr. 14). Her work abilities were also compromised by hand and foot numbness (Tr. 15). She also experienced hand tightness and burning due to peripheral neuropathy (Tr. 17). She had not driven in the past six months due to foot numbness (Tr. 15). Plaintiff previously drank around a pint of liquor each day but had cut back since September, 2015 abdominal surgery (Tr. 16).

     The ALJ then stated that he was "willing to offer [an award of DIB as of] an amended onset date of December 31, 2014" but would "review the case in about 18 months" (Tr. 18). Plaintiff's attorney responded that he had already spoken to his client and that the offer was "acceptable" (Tr. 18). The attorney recommended that Plaintiff "go for it" (Tr. 19). Plaintiff assented to the offer to amend (Tr. 20).

### B. Medical Records

#### 1. Treating Sources[3]

An April, 2014 MRI of the brain was unremarkable (Tr. 213). The following month, Neesha R. Berry, M.D. noted the conditions of depression, neuropathy, gait problems, alcohol abuse, and leg and arm numbness(Tr. 310, 313-314). Plaintiff reported depression and alcohol abuse due to chronic and "incapacitating" pain (Tr. 310). In June, 2014, Frederick A. Wiseman, D.P.M. noted the presence of "severe" peripheral neuropathy, multiple joint pain, and the loss of 30 pounds (Tr. 180). Plaintiff reported back pain, leg cramps, and joint stiffness (Tr. 180). The same month, Nawaf H. Murshed, M.D. noted Plaintiff's report of bilateral foot numbness lasting for one year (Tr. 185, 200). Plaintiff reported losing 30 pounds in the past year "unintentionally" (Tr. 186). Dr. Murshed noted reduced extremity strength and an antalgic gait (Tr. 186). He prescribed Norco for pain management (Tr. 185).

In July, 2014, Harsha P. Jayatilake, M.D. performed acupuncture treatment, noting Plaintiff's report of peripheral neuropathy and depression (Tr. 174-176). An MRI of the cervical spine from the same month showed disc herniations at C3-C4 and C4-C5 with bilateral neural foramina narrowing at C5-C6 (Tr. 196, 198, 273, 298). Dr. Berry's records from the same month note Plaintiff's report that she had fallen six times in the last year (Tr.

---

[3]While Plaintiff must show disability on or before December 31, 2013 for DIB eligibility, the records post-dating the DLI are included where relevant to her condition prior to the expiration of benefits.

293). An August, 2014 EMG report showed right L4-L5 and left L4 radiculopathy (Tr. 191). Dr. Berry noted Plaintiff's report that she had experienced chronic musculoskeletal pain with numbness and tingling for the past 18 months (Tr. 287). A September, 2014 MRI of the lumbar spine showed disc herniations at L3-L4, L4-L5, and L5-S1 with nerve encroachment (Tr. 278). The same month, Samer ElFallai, D.O. noted Plaintiff's report that her condition had worsened over the past year (Tr. 275). A CT of the thoracic spine from the following month showed a "severe scoliotic curvature" (Tr. 264).

In December, 2014, Dr. Murshed opined that Plaintiff's condition was deteriorating and that she was limited to lifting 10 pounds on an occasional basis; standing or walking for less than two hours in an eight-hour workday; and sitting for less than six (Tr. 223). He found that Plaintiff experienced limitations in memory, following simple directions, and reading (Tr. 224).

In February, 2015, M. Fuad Arak, M.D., noting Plaintiff's report of stomach pain and a malnourished appearance, recommended an abdominal ultrasound (Tr. 226). An April, 2015 ultrasound of the abdomen showed the conditions of fatty liver disease, gallstones, and a pancreatic cyst (Tr. 245, 255). Treating records from the same month note Plaintiff's report of "acute buttock pain," "other acute pain," gait disturbance, abdominal pain, and alcohol abuse (Tr. 250). Dr. Berry's August, 2015 records note Plaintiff's report of "minimal relief" from pain medication (Tr. 332). October, 2015 Videonystagmography ("VNG") testing was positive for central vestibular abnormality (Tr. 346). A February, 2016 MRI of the cervical spine showed degenerative spondylosis and spondylolisthesis (Tr. 352). An MRI

of the lumbar spine from the same month showed scoliosis with degenerative spondylosis (Tr. 354).

## 2. Non-Treating Sources

In October, 2014, Nick Boneff, Ph.D. performed a consultative psychological examination, noting Plaintiff's report of depression, "delirium tremors," and "alcohol abuse with physiological dependence" (Tr. 214). Dr. Boneff noted Plaintiff's reported of year-long foot, leg, and hand numbness (Tr. 214). Plaintiff reported that she was trying to cut back on her alcohol use (Tr. 215). Dr. Boneff opined that due to Plaintiff's history of alcohol abuse, she would not be capable of handling benefit funds but was psychologically capable of work involving "a moderate to higher degree of complexity . . ." (Tr. 217). Later the same month, Zara Yousuf, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff's limitations in activities of daily living, social functioning, and concentration, persistence, and pace were mild (Tr. 50).

In February, 2015, Dr. Boneff performed a second psychological evaluation, noting Plaintiff's report of irritability and hearing the voice of her deceased mother telling her "'You gotta get it together'" (Tr. 230). Dr. Boneff found the presence of an adjustment disorder with depression (Tr. 231). The same day, Cynthia Shelby-Lane, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's history of depression, scoliosis, gastrointestinal disorders, and neuropathy (Tr. 234). Plaintiff reported that she used a cane for back support since 2014 (Tr. 234). She reported "chronic back pain since the 2000's," right-sided weakness, and paresthesias of the feet (Tr. 234). Dr. Shelby-

Lane noted "extreme curvature" of the spine with "obvious deformity in the thoracic and lumbar areas" (Tr. 236). She observed a "slight limp" and pain upon squatting and climbing stairs (Tr. 236, 238).

### C. Vocational Expert Testimony

VE James M. Fuller classified Plaintiff's former work as a human resource representative as skilled and exertionally sedentary[4] (Tr. 5, 36).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that as of amended alleged onset of disability date of December 31, 2014, Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine; degenerative disc disease of the cervical spine; peripheral neuropathy; and degenerative disc disease of the cervical spine; peripheral neuropathy; and degenerative joint disease" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 38, 41). He found that Plaintiff experienced mild deficiencies in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 40). The ALJ found that Plaintiff retained the

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Residual Functional Capacity ("RFC") for sedentary work and required "a cane for ambulation" and the need to be "absent from work one to three days per month" (Tr. 41). Citing the treating records from July, 2014 forward, the ALJ found that Plaintiff's allegations of limitation were "generally credible" (Tr. 43).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A Full and Fair Hearing

Plaintiff argues that she "reasonably relied upon the evidence, hearing notice, and ALJ assertions that her [DLI] was December 31, 2014" and amended her alleged onset of disability to that date "only in response to an offer of benefits based upon that date with the amendment contingent on eligibility." *Plaintiff's Brief,* 18 (*citing* Tr. 18-20), *Docket #10,* Pg ID 405.  Plaintiff also points out that the Notice of Hearing she received prior to the

February 8, 2016 hearing erroneously states that her DLI was December 31, 2014. *Id.* at 20 (*citing* Tr. 79, 81). She contends that misstatement of the period under review violated 42 U.S.C. § 405(b)(1) which requires "'reasonable notice and opportunity for a hearing.'" *Id.* (*citing* § 405(b)(1)). Plaintiff argues further that in providing erroneous information in the Notice of Hearing, the Commissioner failed to comply with its own requirement that that the pre-hearing notice "'contain a statement of the specific issues to be decided . . . .'" *Id.* at 22 (*citing* 20 C.F.R. § 404.938(b)).

In response, Defendant acknowledges that Plaintiff was erroneously informed that her DLI was December 31, 2014. *Defendant's Brief,* 6-8, *Docket #14,* Pg ID 428. Defendant contends however that once the error was discovered (subsequent to Plaintiff amending her onset date and administrative decision) the Appeals Council notified Plaintiff that they intended to reverse the award of benefits because the DLI of December 31, 2013 pre-dated the amended alleged onset of disability date of December 31, 2014. *Id.* at 7 (*citing* Tr. 117-118). Defendant points out that Plaintiff was informed that before Appeals Council made a decision, she could "submit a statement regarding the law or facts of the case [] and request an appearance before the Appeals Council." Defendant notes that Plaintiff did not submit a written statement or request an appearance. *Id.* Defendant contends that Plaintiff's "failure to take advantage of the opportunity afforded" by the Appeals Council "is fatal to her claim." *Id.* (*citing Lawson v. HHS*, 688 F.2d 436, 440 (6th Cir. 1982)).

Due process under the Fifth Amendment "requires that a social security hearing be 'full and fair.' " *Flatford v. Chater,* 93 F.3d 1296, 1305 (6th Cir.1996)(*citing Richardson v.*

-11-

*Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "Remand for further proceedings is appropriate in cases in which the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the application and regulations." *Manago v. Barnhart* 321 F.Supp.2d 559, 568 (E.D.N.Y.,2004); *Johnson v. Bowen,* 817 F.2d 983, 986 (2nd Cir.1987)(remand ordered "to ensure that the correct legal principles are applied to determination of [the] disability claim); *Reynolds v. Commissioner of Social Security,* 2011 WL 1228165, *2 (6th Cir. April 1, 2011)(*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.1995)) (application of "an erroneous legal standard" grounds for remand).

It is undisputed that Plaintiff did not know that she was waiving her claim for DIB at the time that she amended her alleged onset date. The pre-hearing notice incorrectly states that her DLI was December 31, 2014 (Tr. 79, 81). Both the ALJ and Plaintiff's attorney informed her at the hearing that she would be eligible for benefits if she changed her alleged onset of disability date to the day errantly identified as the DLI (Tr. 18-20). Plaintiff's waiver of her claim to DIB between the original alleged onset date of June 13, 2013 and the actual DLI of December 31, 2013 was based on the mistaken belief that she was eligible for DIB until the end of following year. Without more, the lack of a *knowing* waiver to her entitlement to DIB constitutes grounds for remand. *See Talanker v. Barnhart*, 487 F.Supp.2d 149, 155–56 (E.D.N.Y. February 28, 2007)(remand appropriate where "the record is inconclusive as to whether Mr. Talanker knowingly consented to the amended onset date identified by his attorney"); *see also Trusty v. Apfel*, 1998 WL 914257, at *3 (E.D.La.

December 29, 1998)(remand ordered for determination of whether the claimant was disabled as of the original alleged onset of disability date where "the record does not reflect" his "assent" to an amended onset date subsequent to the expiration of entitlement to DIB benefits). Likewise here, because Plaintiff changed her onset date in response to erroneous information provided by the ALJ and her attorney, she did not knowingly waive her entitlement to DIB.

Defendant's contention that Plaintiff's failure to respond to the Appeals Council notice after the error was discovered was "fatal to her claim" is without merit. In contrast to the *de novo* determination by the ALJ, *see Salling v. Bowen*, 641 F.Supp. 1046, 1053 (W.D.Va.,1986), the May 23, 2016 notice by the Appeals Council offers only to consider "more evidence" provided only it were "new and material," and "about 'disability' starting on or before December 31, 2013 . . . ." (Tr. 118). However, the recording/transcript of the hearing, with nothing more, shows that Plaintiff waived her entitlement to DIB based on the erroneous information provided by both her attorney and the ALJ. It is unclear what "new and material" information Plaintiff could have provided that was not already in the possession of the Appeals Council. Likewise, while the notice advised Plaintiff that she could "ask for an appearance *if*" there were "an important question of law or policy" or, if "oral argument would help" the Appeals Council "reach the proper decision," (Tr. 118)(emphasis added), it is unclear how "oral argument" would be necessary to determine whether Plaintiff's waiver of her entitlement to DIB was done knowingly.

Moreover, in response to the notice, Plaintiff provided documentation that she began receiving state disability benefits in December, 2014, reasonably concluding that the Appeals Council request was limited to "new" information (Tr. 142). While the receipt of state-issued benefits was not "material" to whether she was disabled on or before December 31, 2013, it cannot be concluded she ignored the Appeals Council notice. Accordingly, Defendant's contention that Plaintiff has waived her current argument because she "failed" to respond to the Appeals Council notice should be rejected.

Contrary to the Appeals Council determination, Plaintiff was deprived of her entitlement to a full and fair hearing in multiple ways. Had Plaintiff had not amended the alleged onset date in exchange for an assurance of benefits, the ALJ would have been required to consider whether she were disabled between the original onset date of June 13, 2013 and December 31, 2013. Instead, acting on the erroneous assumption that the entitlement ended one year later, he provided no analysis of whether Plaintiff was disabled before the end of 2013.

To be sure, the medical transcript admittedly does not include medical records created before April, 2014. Notwithstanding the lack of medical records predating December 31, 2013 DLI, the issue of whether Plaintiff was disabled before the end of 2013 is at a minimum unresolved. The 2014 records, referencing Plaintiff's condition before the DLI, contain support for the conclusion for that she was disabled by the end of the previous year: In April, 2014, she reported "incapacitating" pain (Tr. 310); in June, 2014, she reported bilateral foot numbness for the past year (Tr. 185); the abnormal MRIs of the cervical and

-14-

lumbar spine and EMG studies performed in the first nine months of 2014 support Plaintiff's August, 2014 report to Dr. Berry that she had experienced chronic musculoskeletal pain with numbness and tingling for the past 18 months (Tr. 191, 196, 278, 287).  Although the ALJ did not address the question of whether Plaintiff was disabled before the end of 2013, he acknowledged the abnormal imaging studies from 2014 reflecting serious, long-term musculoskeletal and neurological conditions (Tr. 42, 191, 196, 264, 278).  He also found Plaintiff's allegations of limitation credible (Tr. 20).

Further, even assuming that the 2014 records are not dispositive of Plaintiff's condition before the end of 2013, upon remand, the ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)(*citing* 20 C.F.R. §§ 404.1517, 416.917). The lack of medical records pre-dating the DLI does automatically defeat Plaintiff's claim to DIB.  In the instance that the onset of disability cannot be determined by the existing medical records, "it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . ." SSR 83-10, 1983 WL 31249, at *3 (1983).  In such cases, the ALJ "should call on the services of a medical advisor when [the date of] onset must be inferred." *Id.*

Here, the record contains a finding of disability as of December 31, 2014, a date agreed to by the ALJ and Plaintiff based on the mistaken belief that it would entitle her to ongoing DIB.  As such, determination of whether Plaintiff was disabled before December

31, 2013 is critical to her entitlement to DIB and the records created after the DLI contain some support for a finding of disability before the expiration of benefits. Accordingly, I recommend a remand for further administrative proceedings consistent with the above analysis and if required, testimony by a medical expert to aid the ALJ in determining whether Plaintiff was disabled on or before December 31, 2013. *Faucher v. Secretary of Health & Hum. Servs.*, 17 F.3d 171 (6th Cir. 1994).

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #14] be DENIED and that Plaintiff's motion for summary judgment [Docket #10] be GRANTED to the extent that the case be remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

> s/ R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: November 30, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 30, 2017, electronically and/or by U.S. mail.

> s/Carolyn M. Ciesla
> Case Manager to the
> Honorable R. Steven Whalen